**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Collins, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>City of Phoenix, et al.,<br><br>    Defendants. | No. CV-23-01440-PHX-DLR<br><br>**ORDER** |

Before the Court are motions to dismiss filed by Defendant Edward Zuercher (Doc. 31), Defendant Jeri Williams (Doc. 33), and Defendants the City of Phoenix ("City") and Lori Bays (Doc. 32).[1] The Court has considered these motions and the accompanying briefs (Doc. 36; Doc. 38; Doc. 41; Doc. 49; Doc. 50; Doc. 51), and has reviewed Plaintiffs' three notices of supplemental authorities (Doc. 43; Doc. 44; Doc. 45). As explained below, Zuercher's and Williams's motions are granted, and the City's and Bays's motion is granted in part.

**I.     Background**

This case arises from the fallout of an ill-advised decision in 2020 to arrest and to charge a group of protestors with gang-related crimes for protesting police misconduct. At the time of the arrests, Plaintiffs John Collins, Lawrence Hein, and Gabriel Lopez were

---

[1] Oral argument is denied because the motions are adequately briefed, and oral argument will not help the Court resolve the issues presented. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

"Assistant Police Chiefs" in the City's police department. (Doc. 1 ¶ 9.) Defendants are various City employees and the City itself. (*Id.* ¶¶ 11–14.)

### a. Facts

Plaintiffs were not directly involved in the arrests of the protestors.[2] Nevertheless, a few days after the arrests, Plaintiffs were invited to a meeting to discuss the charges against the protestors with a prosecutor and a detective. (*Id.* ¶¶ 36, 39–40.) The protestors were initially arrested on several charges, including obstructing a thoroughfare and unlawful assembly. (*Id.* ¶ 35.) But at the meeting, the prosecutor and the detective shared their intent to pursue an additional charge: assisting a criminal street gang. (*Id.* ¶ 40.) Following the meeting, Officers Collins and Lopez briefed their immediate superior and informed him of the decision to add the additional charge. (*Id.* ¶ 45.)

There was no sound legal or factual basis for the gang-related charges, and they were dismissed. (*Id.* ¶¶ 57–60.) News of this scandal spread quickly, leading to "significant political fallout within the City of Phoenix." (*Id.* ¶¶ 56, 62.) Defendants used Plaintiffs as scapegoats for the mishandled prosecutions. Williams—who was Chief of Police at the time—claimed Plaintiffs never briefed her on the gang-related charges, despite Plaintiffs properly reporting these charges to their superior, who should have, in turn, reported them to her. (*Id.* ¶ 97.) Williams summarily demoted Plaintiffs "in collaboration with City Manager Zuercher" without providing them with notice or an opportunity to be heard, in violation of established procedure. (*Id.* ¶ 80.) Their demotions were accompanied by reductions in salary and negative performance evaluations. (*Id.* ¶¶ 82–83.) Williams called Plaintiffs "collateral damage," and Plaintiffs' superior made several comments to them over the phone indicating that he knew their demotions were done improperly and without just cause. (*Id.* ¶¶ 86, 89–92.) Williams and Zuercher publicly shamed Plaintiffs and accused them of misconduct in releases to the press. (*Id.* ¶¶ 97, 99, 104–05.)

In an effort to clear their names, Plaintiffs surreptitiously recorded the phone calls

---

[2] The facts are recited as alleged in the complaint.

1  with their superior—during which he admitted that both he and Williams were informed
2  of the gang-related charges—and leaked those recordings to the press. (*Id.* ¶¶ 93–95, 106.)
3  Plaintiffs were later subjected to several disciplinary investigations. (*Id.* ¶¶ 107, 109.)
4  During one of these investigations, Plaintiffs disclosed that their superior and another
5  Assistant Chief had engaged in and tolerated unlawful discrimination. (*Id.* ¶ 108.) During
6  another investigation, the department concluded that Plaintiffs had, in fact, properly
7  informed their superior of the charges. (*Id.* ¶ 112.) But despite that finding, the department
8  did not restore Plaintiffs to their previous positions or salaries. (*Id.* ¶ 113.)

### b. Prior State-Court Action and Procedural History

In response to their demotions, Plaintiffs sued Zuercher, Williams, and the City in Maricopa County Superior Court.[3] (Doc. 31-1 at 2–17.) They alleged that the defendants violated the Peace Officers Bill of Rights, painted them in a false light, defamed them, and denied them due process in violation of the Arizona Constitution. (*Id.* at 16–17.) Following argument, the court dismissed the Peace Officers Bill of Rights, false light, and defamation claims for failure to state a claim and legal deficiencies. (*Id.* at 8–90.) The court, however, allowed the state-law due process claim to proceed against the City. (*Id.* at 86.) Plaintiffs never sought leave to amend the claims that had been dismissed. (*Id.* at 92–93.) Instead, they moved to voluntarily dismiss the remaining due process claim in favor of filing a new case in federal court. (*Id.*) The court entered final judgment against Plaintiffs "as to all claims brought against [Zuercher and Williams] in this action" and granted voluntary dismissal of the state-law due process claim against the City. (*Id.* at 102–03.)

Shortly before final judgment was entered, Plaintiffs filed suit in this Court adding Assistant City Manager Bays as a defendant and alleging that Defendants violated the Due Process Clause of the Fourteenth Amendment, the Due Process Clause of the Arizona Constitution, the Arizona Peace Officers Bill of Rights, and City of Phoenix municipal law.

---

[3] As requested by Zuercher, the Court takes judicial notice of the state-court filings as an undisputed matter of public record. *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002); Fed. R. Evid. 201(b)–(c); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (holding that a court may consider matters of judicial notice without converting a motion to dismiss into a motion for summary judgment).

(Doc. 1 at 11.) The complaint further alleges that Bays and the City retaliated against Plaintiffs for exercising their First Amendment rights. (*Id.* at 13.) Defendants move to dismiss the claims on various grounds. (Doc. 31; Doc. 32; Doc. 33.)

## II.     Legal Standard

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include sufficient facts to demonstrate that the claim is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must be more than a mere "formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* When analyzing the sufficiency of a complaint, the Court accepts all well-pled factual allegations as true and construes those allegations in a light most favorable to the non-moving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). But the Court is not required "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III.    Analysis

Defendants Zuercher and Williams filed separate motions to dismiss, but the substance of their arguments is the same. The Court finds it appropriate to analyze those motions together and will dispose of them first. Then the Court will proceed to the City and Bays's joint motion. Finally, the Court will address Plaintiffs' notices of supplemental authority.

### a.     To the extent Plaintiffs raise state-law claims in their complaint, they are dismissed as abandoned.

The complaint re-states previously dismissed state-law claims against Zuercher and Williams—defendants in the previously dismissed suit. Plaintiffs contend that "[t]hey are not asserting any state law claims," and "only [42 U.S.C. §] 1983 claims are being asserted here." (Doc. 38 at 12; Doc. 41 at 12.) They do not otherwise respond to Zuercher's and Williams's arguments for dismissal of these claims.

The meet-and-confer requirement is designed to avoid spending the parties' and the Court's time and resources on needless argument like this. If, as Plaintiffs claim, they did not intend to pursue state-law claims, they should have amended their complaint following the meet-and-confer to remove them. Because previously dismissed state-law claims are in the complaint and Plaintiffs have chosen not to amend their complaint to remove them, the Court will dispose of them instead.

To the extent that Plaintiffs raise state-law claims against *any* of the defendants (including the City and Bays), those claims have been abandoned. *See Robinson v. Fischer*, No. 09 Civ. 882(LAK)(AJP), 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) ("Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim."). Further, the claims against Zuercher and Williams are barred by claim preclusion because they are the same claims as those brought in the state-law case and dismissed by the state court on the merits. *See* discussion *infra* Section b.

**b. Plaintiffs' federal due process claims against Zuercher and Williams are barred by claim preclusion.**

Zuercher and Williams argue that the remaining federal due process claims against them are barred by claim preclusion. (Doc. 31 at 2; Doc. 33 at 1.) The doctrine of res judicata, or claim preclusion, provides that "a final judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same claim." *Dressler v. Morrison*, 130 P.3d 978, 981 (Ariz. 2006). Federal courts give state-court judgments "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

The judgment at issue was rendered in state court in Arizona, so Arizona law governs its preclusive effect. (Doc. 31-1 at 75.) Under Arizona law, a party asserting claim preclusion must show "(1) an identity of claims in the suit in which a judgment was entered

and the current litigation, (2) a final judgment on the merits in the previous litigation, and (3) identity or privity between parties in the two suits." *In re Gen. Adjudication of All Rts. to Use Water in the Gila River Sys. & Source*, 127 P.3d 882, 887–88 (Ariz. 2006).

Plaintiffs do not contest that (1) there is a final judgment on the merits in the previous litigation and (2) the same parties are involved. The only disputed issue is whether there is an identity of claims. Zuercher asserts that Arizona has abandoned its reliance on the "same evidence" test to determine whether there is an identity of claims in favor of the more-commonly-used "transactional test," and this Court should follow suit. (Doc. 31 at 6, 9–10.) Plaintiffs counter that the Arizona Supreme Court has not affirmatively denounced the same evidence approach to claim preclusion, and in the absence of affirmative instruction to the contrary, this Court is bound to apply that test. (Doc. 38 at 11–12.)

There is, indeed, a modern trend in favor of the transactional approach, but Arizona courts have repeatedly reiterated that Arizona still uses the same evidence test. *See, e.g.*, *Lawrence T. v. Dep't of Child Safety*, 438 P.3d 259, 264 (Ariz. Ct. App. 2019); *see also Axon Enter. Inc. v. Vievu LLC*, No. CV-17-01632-PHX-DLR, 2018 WL 317289, at *3 n.5 (D. Ariz. Jan. 5, 2018). In a recent opinion, the Arizona Supreme Court included a brief discussion of the differences between *claim* and *issue* preclusion while deciding a question about *issue* preclusion. *Crosby-Garbotz v. Fell in & for Cnty. of Pima*, 434 P.3d 143, 148 (Ariz. 2019). Embedded in that discussion is the following statement: "Under claim preclusion, a final judgment may preclude later litigation of other causes of action based on the transaction or series of transactions out of which an action arises, considering 'whether facts are related in time, space, origin, or motivation.'" *Id.* (quoting Restatement (Second) of Judgments § 24 (Am. L. Inst. 1982)). This statement has created some confusion for courts dealing with the preclusive effect of Arizona judgments, and it fairly gave Zuercher a basis to argue for application of the transactional test.[4] *See, e.g.*, *Hastings v. Grundy*, No. CV-19-4645-PHX-DGC, 2020 WL 5517303, at *3 (D. Ariz. Sept. 14,

---

[4] Defendant Williams discusses this trend in her reply brief, but she does not argue in favor of that test. (*See* Doc. 33 at 8.) Both Zuercher and Williams believe that this suit is precluded no matter what test applies. (*Id.*; Doc. 31 at 10.)

- 6 -

2020). Nevertheless, that statement was not a holding in the case, it is dictum and cannot justify a departure from the same evidence test here.

The same evidence test asks whether additional evidence is necessary to prevail in the second action that was not necessary in the first. *Phx. Newspapers, Inc. v. Dep't of Corr., Ariz.*, 934 P.2d 801, 804 (Ariz. Ct. App. 1997). "If no additional evidence is needed . . . , then the second action is barred." *Id.* A "claim" for the purposes of the same evidence test encompasses all claims that arise from a single set of facts. *Holcombe v. Hosmer*, 477 F.3d 1094, 1098 (9th Cir. 2007). Although the *Holcombe* case dealt with the preclusive effect of a state-court judgment under Nevada law, its reasoning is persuasive because Nevada, too, employs the same evidence test. *See id.* In that case, the Ninth Circuit held that a § 1983 claim was barred by a prior administrative appeal of the plaintiff's termination, even though the § 1983 claim was not actually litigated. *Id.* at 1097.

Here, Plaintiffs' § 1983 procedural due process claim is founded upon the same facts as their previous state-law procedural due process claim. Both claims rise and fall on the same evidence. In their complaint, Plaintiffs allege here the same facts alleged in state court. (*Compare* Doc. 31-1 at 2–17, *with* Doc. 1.) And Arizona courts regularly analyze federal and state due process claims brought in the same suit together because the two clauses "contain nearly identical language and protect the same interests." *Vong v. Aune*, 328 P.3d 1057, 1061 (Ariz. Ct. App. 2014); *see also Gonzales v. Ariz. St. Bd. of Nursing*, 528 P.3d 487, 491 (Ariz. Ct. App. 2023).

Plaintiffs argue that the claim is not barred, relying on *Power Road-Williams Field LLC v. Gilbert*, 14 F. Supp. 3d 1304 (D. Ariz. 2014). But that case is distinguishable. There, the claims in the federal-court action arose from "some of the same" facts as in the previous state-court action, but the plaintiff's claims were "legally and factually distinct." *Id.* at 1309–10. Many of the facts making up the claims of the federal-court action occurred after the state-court action was filed. *Id.* at 1309. Though the facts arose from the same series of occurrences, the federal action was distinct enough to escape claim preclusion. *Id.* at 1310.

In the present case, the complaint filed in state court and the operative complaint are

nearly identical. No facts alleged in support of the § 1983 claim occurred after the state-court action was commenced. This isn't a case where Plaintiffs have "implicat[ed] somewhat different facts than those involved in the prior action" and "recast their claims under new theories." *Phx. Newspapers*, 934 P.2d at 805. Rather, Plaintiffs are putting forth the same facts from the same incident and alleging the same theory of liability; the only difference is that they've added a citation to federal law.

Plaintiffs also point to the additional legal elements of a § 1983 claim absent from an Arizona state due process claim. But this argument misses the mark: the issue is whether different or additional *evidence* is necessary to prove those legal elements. The legal tests can be different, but if the evidence needed to prove both claims is the same, the claim is barred. The Court can discern no different or additional evidence Plaintiffs would need to put forth to prove their § 1983 claims that was not necessary to prove their state-law due process claims. The § 1983 claims are thus barred by claim preclusion. For this reason, the Court does not reach these defendants' other arguments for dismissal. All claims against Zuercher and Williams are dismissed.

### c. Plaintiffs plead allegations sufficient to survive dismissal of their due process claim against the City.

"[M]unicipalities and other bodies of local government are 'persons' within the meaning of [§ 1983]," and they can be sued for committing constitutional torts. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988). But claims against municipalities pursuant to § 1983 cannot be based on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, to hold a municipality, like the City, liable for the torts of its employees, the plaintiff must show that (1) the alleged unconstitutional act was committed pursuant to formal governmental policy or longstanding practice or custom, (2) the violation was committed or ratified by an official with final policymaking authority, or (3) the violation was a result of the municipality's deliberate indifference to the need for training. *Id.* at 694; *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

Plaintiffs advance arguments for each theory of municipal liability. But their single,

bare allegation that Defendants' actions were "done pursuant to a custom or policy of the City" cannot serve as the basis to uphold their federal due process claim against the City. (Doc. 1 ¶ 114.) As for the "deliberate indifference" theory, the complaint contains no allegations that there was such an obvious need for training, without which the likelihood of constitutional violations was unreasonably high. *See Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1076 (9th Cir. 2016). In fact, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for the purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). Plaintiffs do not allege any previous constitutional violations nor suggest that the City engaged in a pattern of constitutional violations.

### i. "Final Policymaker" Argument

That leaves Plaintiffs' arguments that Zuercher or Williams possessed final policymaking authority or that the City Council ratified Plaintiffs' demotions. (Doc. 36 at 11.) "Whether a particular official has final policy-making authority is a question of state law." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).[5] The relevant inquiry is whether the decisionmaker possesses final authority "with respect to the action ordered." *Davis v. Mason Cnty.*, 927 F.2d 1473, 1480 (9th Cir. 1981) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

Plaintiffs challenge procedural deprivations in connection with their demotions. As City Manager, Zuercher has the power to appoint, suspend, and remove city employees. City of Phoenix, City Charter Ch. III § 2(b)(4) (2018). Zuercher may delegate these powers to his subordinates, including Williams. *Id.* And the City Council cannot interfere with Zuercher's decisions. As the Charter provides:

> Neither the Council nor any of its Members shall direct or request the appointment of any person to, or his removal from, office by the City Manager or by any of his subordinates, or in any manner take part in the appointment or removal of officers and employees in the administrative service of the City. . . . [T]he Council and its

---

[5] As requested by the City and Bays, the Court takes judicial notice of the City of Phoenix City Charter ("Charter"). *See* Ariz. Const. art. XIII, § 2; Fed. R. Evid. 201(c)(2).

- 9 -

> Members shall deal with the administrative service solely through the City Manager[.]

*Id.* § 4. Moreover, the City Manager is charged with "see[ing] that all ordinances, provisions of this Charter, and acts of the Council are faithfully executed, through enforcement by him or by officers subject to his direction and supervision." *Id.* § 2(b)(4).

The City's Personnel Rules outline the appropriate procedure for taking disciplinary action, including demotions. City of Phoenix Personnel Rules 20–21.[6] The only review of Zuercher's or his subordinates' disciplinary decisions is left to a hearing officer—that is, if the employee is properly served with notice of the reasons for the disciplinary decision with enough time to appeal it. City of Phoenix Personnel Rule 21. Plaintiffs allege that it was exactly this procedure that they were denied. It was only Zuercher or Williams that could have properly ensured procedure was followed. *See* City of Phoenix, City Charter Ch. XXV § 6 (The City Manager must "[a]dminister . . . the personnel rules" and "[e]nforce approved personnel rules."). And as a matter of law, Williams is not a final policymaker; she was merely delegated the power to make certain employment decisions in the police department. *See Praprotnik*, 485 U.S. at 130 ("Simply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of authority to make policy.").

As a matter of state law, Zuercher is the final policymaker regarding employee discipline. The Court cannot second-guess state law on this point. *Id.* at 126 ("[A] federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it."). Thus, to survive dismissal, Plaintiffs must plausibly allege that Zuercher ratified Williams's decision.

The decision to afford due process was not a "discretionary decision[] constrained by policies not of the official's making," *id.* at 127, as the City urges. (Doc. 32 at 4.) Rather, the allegations outline a situation where the City intentionally deprived Plaintiffs of

---

[6] As requested by Zuercher, the Court takes judicial notice of the City's Personnel Rules. *See Biggs v. Town of Gilbert*, No. CV11-330-PHX-JAT, 2011 WL 1793252, at *3 n.4 (D. Ariz. May 11, 2011); Fed. R. Evid. 201(b)–(c).

- 10 -

mandatory procedural safeguards to contest their demotions. Taking the Plaintiffs' allegations as true, Williams did not provide Plaintiffs with proper notice, and Zuercher ratified this action by collaborating with her to demote them and releasing "a memorandum to the media . . . suggesting that Plaintiffs were removed from their positions as Assistant Chiefs for failing to inform their supervisors of the impending gang-related charges against the protestors." (Doc. 1 ¶ 103.)

In response, the City offers *Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992), where the Ninth Circuit reviewed a district court's denial of a judgment notwithstanding the verdict. In that case, the court held that a city manager's acquiescence in an employee's termination could not serve as the basis for municipal liability under § 1983 because the plaintiff-employee had not put forth any evidence of "affirmative or deliberate conduct" indicating ratification by the city manager. *Id.* at 1348. This case stands at a different procedural posture; Plaintiffs need only have *alleged* such affirmative conduct. And they have done so. Plaintiffs allege more than a mere acquiescence; they allege that Zuercher publicly approved of the demotions. Further, letters between Zuercher and Williams clarify the allegation that they "collaborated" on the disciplinary decisions and show that Zuercher may have, in fact, directed Williams to demote Plaintiffs.[7] (Doc. 36-1 at 1–8.)

The Court finds that Zuercher is a final policymaker and that Plaintiffs have plausibly alleged that he ratified Williams' disciplinary decision. The Court need not reach the parties' arguments as to whether the City Council ratified Williams' decision.

### ii. Liberty Interest v. Property Interest Issue

Plaintiffs claim that they were deprived of either a liberty or a property interest without due process. At this stage of the litigation, the City does not contest that Plaintiffs have a property interest in their positions.[8] Because the City has not challenged the

---

[7] In their response, Plaintiffs attached letters between Zeurcher and Williams regarding the demotions. Defendants do not contest their authenticity. "[E]xtraneous materials may . . . be used to clarify allegations in the complaint whose meaning is unclear" on a 12(b)(6) motion to dismiss. *Ranch Realty, Inc. v. DC Ranch Realty, LLC*, 614 F. Supp. 2d 983, 988 (D. Ariz. 2007) (citing *Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000)).

[8] The Court acknowledges that the City has not "conceded" that Plaintiffs have a property interest in their assignments and may contest this issue later in the litigation. (*See* Doc. 50 at 6.)

- 11 -

plausibility of Plaintiffs' allegations on this point, the claim can proceed on Plaintiffs' theory that they had a *property* interest in remaining in their "Assistant Police Chief" positions. They cannot proceed on their claim that they had a *liberty* interest in the same because they were demoted—not terminated—from their positions. *Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998) (holding plaintiff must show "the charge is made in connection with termination of employment" to state a liberty interest claim).

### d. Plaintiffs fail to plausibly allege the causation element of their First Amendment retaliation claim against the City and Bays.

Plaintiffs also claim that Bays and the City retaliated against them in violation of the First Amendment for complaining of due process violations and discriminatory misconduct in the police department. (Doc. 1 ¶ 107.) To survive a motion to dismiss on a retaliation claim, a plaintiff must plausibly allege "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).

The City and Bays argue that the complaint fails to plausibly allege the causation element of their claim. The Court agrees. Causation in the First Amendment retaliation context means but-for causation. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir. 2012). In other words, "retaliatory animus" must be the cause of the injury. *Id.* "In the absence of sufficient facts to support a plausible inference of a substantial causal relationship between the constitutionally protected activity and the adverse action," the Court must dismiss a First Amendment retaliation claim. *Touma v. Gen. Couns. of Regents*, No. SACV171132VBFKS, 2017 WL 10541005, at *8 (C.D. Cal. Dec. 13, 2017). Retaliatory motive can be shown by "(1) proximity in time between the protected speech and the alleged retaliation; (2) the employer's expressed opposition to the speech; and (3) other evidence that the reasons proffered by the employer for the adverse employment

action were false and pretextual." *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002).

Plaintiffs allege that they engaged in protected activity when they publicly released the recorded phone call with their superior; when they reported the due process violations; and when they reported unlawful discrimination. (Doc. 1 ¶ 106–07.) Some time after these events (the complaint does not specify when), the City and Bays subjected Plaintiffs to disciplinary investigations and threats of discipline. (Doc. 36 at 18.) Plaintiffs also allege that their "undesirable transfers" were retaliatory. (*Id.*)

Plaintiffs claim that because Bays is employed by the City and wanted to "curry favor with her bosses," her retaliatory motive can be inferred. (*Id.*) But this argument fails; "[m]otivation to curry favor with [the City] is not the same as motivation to retaliate against" Plaintiffs for their protected activity. *Migliore v. Archie*, No. 11-4018, 2014 WL 7177368, at *9 (E.D. Pa. Dec. 16, 2014). No allegations in the complaint suggest Bays had an independent retaliatory motive. Bays was not the subject of their protected speech, nor did she express opposition to Plaintiffs' exercise of their First Amendment rights.

Other City employees publicly accused Plaintiffs of misconduct, but Plaintiffs do not allege any of them expressed opposition to *their speech*. They don't even allege that these investigations took place close in time to their protected activity. Plaintiffs have not provided the Court with any dates of the alleged investigations. And the complaint itself demonstrates that the City had legitimate reasons to investigate Plaintiffs: they surreptitiously recorded phone calls, and they were involved in a high-profile prosecution gone-wrong. The proper way to determine whether Plaintiffs were innocent of misconduct *was* to initiate investigations.

Moreover, the undesirable transfers occurred *before* Plaintiffs leaked the phone calls and made their complaints. So even if those transfers could be considered retaliatory, and even if the City was responsible for them, the transfers cannot serve as the basis of their claim. Plaintiffs' activities after the transfers could not have been the but-for cause of those transfers. The timeline, as alleged, does not support the claims. Accordingly, the retaliation claims against Bays and the City are dismissed.

### e. The Court will not consider Plaintiffs' three notices of supplemental authority.

Plaintiffs filed three notices of supplemental authority. Two of these notices are identical to one another, and both direct the Court to consider an excerpt of a deposition transcript. (Doc. 43; Doc. 44.) The other provides a citation to a Ninth Circuit case from 1990, *Sanchez v. City of Santa Ana*, 915 F.2d 424 (9th Cir. 1990). (Doc. 45.)

"The purpose of a Notice of Supplemental Authority is to inform the Court of newly decided cases that are relevant to the dispute before it; it is not a means to submit additional argument or factual evidence." *Schnellecke Logistics USA LLC v. Lucid USA Inc.*, No. CV-22-01893-PHX-SMB, 2023 WL 5720242, at *1 (D. Ariz. Apr. 12, 2023). The Court is not aware of any authority that permits using a "notice of supplemental authority" to annex a new exhibit to a pleading.[9] A deposition excerpt is not a newly decided case. It is an additional factual allegation (coupled with legal argument) offered to rebut arguments made by the defense. This is an improper notice of supplemental authority, and the Court will not consider it.

The Court also need not consider the notice providing a case citation. Again, notices of supplemental authority are to alert the Court of *newly decided* cases. *Sanchez* (1) was decided in 1990 and (2) is not necessary to decide any of the issues in dispute.

### IV. Conclusion

For the foregoing reasons, all claims against Williams and Zuercher are dismissed. The retaliation claims against the City and Bays are also dismissed. Plaintiffs can proceed on their due process claims against the City and Bays.[10]

Plaintiffs' request for leave to amend is denied for failure to comply with Local Rule

---

[9] And notably, consideration of exhibits beyond those the Court judicially noticed and those that clarified certain allegations in the complaint would convert this motion from a 12(b)(6) dismissal to a motion for summary judgment. Fed. R. Civ. P. 12(b)(6) ("If . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment[.]").

[10] The complaint is devoid of any allegations regarding Defendant Bays's involvement in the deprival of Plaintiffs' due process rights, and the Court is skeptical that Plaintiffs intended to proceed against her on this claim. Nevertheless, Plaintiffs allege that *all* the defendants violated § 1983, and Bays did not move to dismiss that count, so it will stand.

15.1(a) and the Court's standard order (Doc. 6). They may, however, file a motion for leave to amend that complies with Local Rule 15.1(a) if they believe they can cure the defects identified in this order. Plaintiffs are also instructed to re-review the Court's standard order.

**IT IS ORDERED** as follows:

1. Defendant Zuercher's motion to dismiss (Doc. 31) is **GRANTED**.
2. Defendant Williams's motion to dismiss (Doc. 33) is **GRANTED**.
3. Defendants the City and Bays's motion to dismiss (Doc. 32) is **GRANTED IN PART** and **DENIED IN PART**. The retaliation claims are dismissed. The due process claims may proceed.
4. Plaintiffs' request for leave to amend is **DENIED** without prejudice to Plaintiffs' filing a motion for leave to amend that complies with LRCiv 15.1(a).

Dated this 18th day of October, 2024.

Douglas L. Rayes
Senior United States District Judge