**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Collins, et al., | No. CV-23-01440-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Phoenix, et al., | |
| Defendants. | |

Before the Court are a motion for summary judgment filed by Defendants City of Phoenix ("City") and Lori Bays (Doc. 85), a cross-motion for partial summary judgment filed by Plaintiffs John Collins, Lawrence Hein, and Gabriel Lopez (Doc. 86), and Defendants' motion to strike exhibits to Plaintiffs' reply (Doc. 96). The motions are fully briefed.[1] (Docs. 89, 91, 94, 95.) For the following reasons, the Court grants Defendants' motion and denies Plaintiffs' motion.

**I.   Background**

This case arises from the fallout of a decision in 2020 to arrest and charge a group of protestors with gang-related crimes for protesting police misconduct. At the time of the arrests, Plaintiffs were "Assistant Police Chiefs" in the City's police department. (Doc. 1 ¶ 9.) As a part of the fallout, Plaintiffs were removed from their roles as Assistant Chiefs and

---

[1] Oral argument is denied because the motions are adequately briefed, and oral argument will not help the Court resolve the issues presented. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

returned to positions as Commanders. (*Id.* ¶ 80.)

Plaintiffs brought claims against various City employees and the City itself. (*Id.* ¶¶ 11–14.) All Defendants moved to dismiss. (Docs. 31, 32, 33.) The Court granted motions filed by Edward Zuercher and Jerri Williams, the City Manager and Chief of Police at the relevant times, respectively. (Doc. 52 at 15.) The Court also dismissed the retaliation claims against Bays and the City. (*Id.*) The remaining Defendants are Bays, who was Assistant City Manager at the relevant times, and the City. The only remaining claim is a due process claim. (*Id.*, Doc. 1 ¶ 13.) Defendants now move for summary judgment and Plaintiffs move for partial summary judgment.

## II.    Summary Judgment

### A.    Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the non-moving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the non-moving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (quotation omitted). The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)

(internal quotation and citation omitted). "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies. Inc.*, 210 F.3d. 1099, 1103 (9th Cir. 2000).

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57 (holding that the plaintiff must present affirmative evidence to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citation omitted)).

**B.   Analysis**

As a preliminary matter, Defendants assert there is no viable claim against Bays because Plaintiffs have provided no evidence that Bays participated in the decision regarding Plaintiffs employment as Assistant Chiefs. (Doc. 85 at 19.) Plaintiffs do not address this argument in their Response or provide any evidence that Bays was involved. Accordingly, Bays is entitled to summary judgment. Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it."). The Court will address the remaining arguments in turn as they relate to the City.

**i.   *Monell* Liability**

The City argues that Plaintiffs cannot establish municipal liability under *Monell* because there is no evidence that Zuercher ratified any alleged due process violations committed by Williams in removing Plaintiffs as Assistant Chiefs. (Doc. 85 at 19–21.)

Plaintiffs respond that they have established *Monell* liability because their due process rights were violated by Williams, who they argue is the City's final policymaker regarding police discipline. (Doc. 91 at 17–18.)

      Section 1983 provides a cause of action for those who have been deprived of their constitutional rights by persons acting under color of law. 42 U.S.C. § 1983. "[M]unicipalities and other bodies of local government are 'persons' within the meaning of [§ 1983]," and they can be sued for committing constitutional torts. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988). But claims against municipalities pursuant to § 1983 cannot be based on a theory of *respondeat superior*. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, to hold a municipality, like the City, liable for the torts of its employees, a plaintiff must show that (1) the alleged unconstitutional act was committed pursuant to formal governmental policy or longstanding practice or custom, (2) the violation was committed or ratified by an official with final policymaking authority, or (3) the violation was a result of the municipality's deliberate indifference to the need for training. *Id.* at 694; *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

      The only theory that survived the motions to dismiss is the second, that any alleged violation was committed or ratified by an official with final policymaking authority. (Doc. 52 at 8–9.) On that theory, the Court further decided that "as a matter of law, Williams is not a final policymaker; she was merely delegated the power to make certain employment decisions in the police department." (*Id.* at 10.) Additionally, "[a]s a matter of state law, Zuercher is the final policymaker regarding employee discipline. The Court cannot second-guess state law on this point." (*Id.*) Plaintiffs' claim survived the motions to dismiss because they "plausibly alleged that [Zuercher] ratified Williams' disciplinary decision." (*Id.* at 11.) Thus, at this stage, to survive summary judgment Plaintiffs must provide evidence that Zuercher, the final policymaker, ratified an alleged due process violation.

      Yet, Plaintiffs' sole argument is that, based on deposition testimony in a separate case, "by her own admission, Chief Williams has final policy-making authority for police discipline." (Doc. 91 at 18.) Plaintiffs do not acknowledge the Court's previous order

deciding Williams is not the final policymaker, they have not sought reconsideration of that order, and they do not explain how their argument can be squared with it. Because the City is the only remaining defendant, it is incumbent upon Plaintiffs to make a showing sufficient to establish municipal liability under *Monell* in order to proceed with their due process claim. *See Celotex Corp.*, 477 U.S. at 322. They have not done so. By singularly arguing that Williams is an official with final policymaking authority, Plaintiffs neglected to make the necessary showing that Zuercher ratified any alleged violations committed by Williams. Accordingly, the City is entitled to summary judgment.

### ii.    Property Interest

Even if Plaintiffs could show the City was liable under *Monell*, the City still would be entitled to summary judgment because Plaintiffs have not shown they have a constitutionally protected property interest that would trigger due process protection. Plaintiffs argue they have a protected property interest in the rank of Assistant Chief and therefore could not be demoted from that rank without just cause. (Doc. 86 at 10–12.) Plaintiffs rely on statute, the Operation Orders of the City of Phoenix Police Department ("Operation Orders"), and communications from City officials to support their positions. The City argues that Plaintiffs have a protected property interest in their classification of employment but not in the specific rank of Assistant Chief. (Doc. 85 at 9.) The City relies on the City's Personnel Rules and classification plan to support its position. On this issue, each parties' response to the other's motion is identical in substance to the arguments in their own respective motions. (Doc. 89 at 3, Doc. 91 at 10–16.)

"A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution."[2] *Wedges/Ledges of Cal., Inc. v. City of Phoenix.*, 24 F.3d 56, 62 (9th Cir. 1994). "Only after finding the deprivation of a protected property interest," does a court "look to see if the State's procedures comport with due process." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). "To have a property interest in a benefit, a person clearly must have

---

[2] Only Plaintiffs' property interest theory remains. (Doc. 52 at 11–12.)

more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). And "[s]uch entitlements are, of course, . . . not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* (internal quotation marks and citations omitted). Plaintiffs' allegations do not clear this threshold requirement.

Plaintiffs assert that Arizona law creates a legal entitlement to a specific rank within the City's Police Department. (Doc. 86 at 11.) Plaintiffs rely on the Operation Orders which sets out the Department's rank of officers. It indicates that "[i]n order of descending authority, the ranks of sworn police personnel are:" Police Chief, Executive Police Chief, Assistant Chief, Commander, Lieutenant, Sergeant, and Police Officer. (Doc. 86-13 at 15.) And because the rank of Assistant Chief is higher than the rank of Commander, Plaintiffs argue they were entitled to due process before being demoted from Assistant Chief to Commander. Plaintiffs invoke the Peace Officers Bill of Rights ("the POBR") enacted by the Arizona Legislature at A.R.S. § 38-1101 *et seq.* which, among other things, protects law enforcement officers, with limited exceptions, from disciplinary action without just cause. A.R.S. § 38-1103(A). The POBR defines "Disciplinary action" as "the dismissal, the *demotion* or any suspension of a law enforcement officer that is a result of misconduct or unsatisfactory performance." § 38-1101(3) (emphasis added). The City, on the other hand, asserts that there is only a legal entitlement to a classification of employment rather than in a Department rank. (Doc. 85 at 9.) Plaintiffs' argument hinges on whether they were in fact "demoted" from a position they had a legitimate claim of entitlement to.

The City organized its government under the Phoenix City Charter, which the City's electorate enacted pursuant to the Arizona Constitution's "home rule charter" provision. *See* Ariz. Const. art. 13, § 2 (authorizing cities with populations greater than 3,500 to

"frame a charter for its own government consistent with, and subject to, the Constitution and the laws of the state"); City of Phoenix, City Charter Preamble. "Within those boundaries, the Charter effectively acts as the City's 'local constitution.'" *McMichael-Gombar v. Phoenix Civ. Serv. Bd.*, 538 P.3d 1032, 1035 (Ariz. 2023) (quotation omitted). "But unlike a constitution, which is 'a limitation of power,' a city charter grants power." *Id.* (quotation omitted).

Under the Charter, the City Manager is the City's Personnel Official. City of Phoenix, City Charter Ch. XXV § 6. As Personnel Official, the City Manager is responsible for preparing a position classification plan. *Id.* The City Manager may delegate the powers and duties of Personnel Official to any other City officer or employee. *Id.* The City Manager has delegated certain powers and duties to the Personnel Director including the responsibility for preparing the position classification plan. City of Phoenix Personnel Rule 3a1–3a2. Under this delegation, the City's Human Resources Department prepares a classification plan which is approved by the City Council. (Doc. 85-3 at 98.)

The City's classification plan delineates certain classes, and there may be various assignments within each class. (*Id.*) Classes have a job code ending in "0" whereas assignments end with a different digit (*compare* Job Code 62210 *with* Job Code 62212) and an assignment includes the "class title" with another descriptor and an asterisk (*e.g.*, "Police Officer*Pilot"). (*Id.*) For example, the class of "Police Officer" (Job Code 62210) includes the following assignments: Police Officer*Pilot (Job Code 62211); Police Officer*Rescue Pilot (Job Code 62212); and Police Officer*Flight Instr (Job Code 62213). (Doc. 85-2 at 252, Doc. 85-3 at 98.)

The concept of a class is important because the City's Personnel Rules define "Promotion" as "an advancement from a lower *class* to a higher *class* involving an increase in responsibility." City of Phoenix Personnel Rule 1 (emphasis added). The Rules define "Demotion" as "the transfer of an employee from a position in a higher *class* to a position in a lower *class* for which the maximum rate of pay is lower." *Id.* (emphasis added). "Removal of special assignment pay or the transfer of an employee into an equivalent

*classification* . . . does not constitute demotion." *Id.* (emphasis added). Similarly, the Department's Operation Orders define promotion and demotion in relation to class. It defines promotion as "[a]dvancement from a lower *class* to a higher *class* involving an increase in responsibility and salary." (Doc. 86-13 at 4) (emphasis added). It defines demotion as "[r]eduction of an employee from a position in a higher *class* to a position in a lower *class* for which the maximum rate of pay is lower. (*Id.* at 3) (emphasis added). The definitions for promotion and demotion in both the Personnel Rules and the Operation Orders do not mention rank.

Prior to their positions as Assistant Chiefs, Plaintiffs were Commanders. Commander is a class with class title "Police Commander" and a job code of 62240. (Doc. 85-2 at 252.) The position title for Assistant Chief is Police Commander*Asst Chief and the job code is 62242. (Doc. 85-2 at 253, Doc. 85-3 at 98.) The position title has an asterisk and the job code does not end in "0," both of which indicate that Assistant Chief is an assignment within the Commander class, not a higher class. Additionally, the job description for Assistant Chief is entitled "Police Commander Assignment: Assistant Chief," and states that: "A Police Commander on assignment to Assistant Chief is responsible for commanding and administering the activities of a division within the Police Department." (Doc. 85-3 at 2.) The relevant HR Date Change Forms[3] of the City's Personnel Department record that Plaintiffs were transferred from Commander to Assistant Chief, not promoted. (Doc. 85-2 at 172 (Lopez), *Id.* at 178 (Collins), *Id.* at 185 (Hein)). Similarly, the HR Date Change Forms then record that Plaintiffs were transferred from Assistant Chief to Commander, not demoted. (*Id.* 85-2 at 171 (Lopez), *Id.* at 177 (Collins), *Id.* at 184 (Hein)). Each Plaintiff signed their respective HR Date Change Forms for both transfers. Because Plaintiffs remained within the same classification, they were not demoted. *See* City of Phoenix Personnel Rule 1 ("Removal of special assignment pay or the transfer of an employee into an equivalent classification . . . does not constitute demotion.").

---

[3] The City uses this form as an official record to document changes in personnel status. (Doc. 85-2 at 248.)

To counter this, Plaintiffs rely on statements by Williams, Bays, and Mayor Kate Gallego congratulating Plaintiffs on their "promotion" to Assistant Chief. (Doc. 91 at 11–13, Doc. 91-14.) Likewise, Plaintiffs assert that Williams told them they were being demoted. (*Id.* at 13–15; Docs. 91-3, 91-5, 91-6, 91-7.) These statements alone, however, do not create a property interest in the absence of a law creating one. *See Nunez v. City of Los Angeles*, 147 F.3d 867, 872 (9th Cir. 1998) (noting property interests are created by "existing rules or understandings that stem from an independent source such as state law." (quoting *Roth*, 408 U.S. at 577)). And such statement cannot override law and policy to the contrary. *See Brady v. Gebbie*, 859 F.2d 1543, 1550 (9th Cir. 1988).

Although the POBR provides protections against demotion, neither the POBR nor the Operation Orders create a legal entitlement to rank. The relevant authorities instead define promotion and demotion in relation to class—not rank. Here, Plaintiffs were not demoted from a higher class to a lower class but rather remained within the classification of Commander. Plaintiffs therefore were not demoted within the meaning of the POBR, and due process protections were not triggered.

**III.   Motion to Strike**

The City asks the Court to strike the exhibits attached to Plaintiffs' reply brief or, alternatively, to allow it to file a surreply.[4] (Doc. 96.) Though motions to strike generally are disfavored, *Picurro v. Baird*, No. CV 09-00938-PHX-NVW, 2011 WL 4433954, at *1 (D. Ariz. Sept. 23, 2011), LRCiv 7 .2(m)(1) allows a party to move to strike "any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order."

In this instance, the filing subject to the motion to strike was not authorized by the Court. The Court's Scheduling Order stated: "All evidence to support a motion or response that is not already part of the record must be attached to the motion or response itself . . . No new evidence may be submitted with a reply." (Doc. 59.) The briefing for the motions for summary judgment was extensive. Each side filed a motion for summary judgment and

---

[4] No response was filed to the motion to strike and the time to respond has expired.

1  each side filed a response and reply to the others' motion. Yet Plaintiffs did not include the
2  exhibits attached to their reply brief in either their motion for summary judgment or in their
3  response to the City's motion and therefore must be stricken. *Sunburst Mins., LLC v.*
4  *Emerald Copper Corp.*, 300 F. Supp. 3d 1056, 1060 (D. Ariz. Jan. 11, 2018) ("[T]he rule
5  against introducing new facts on reply is not a new one in this district or in the Ninth
6  Circuit. The rule exists to guard against unfairness and surprise."). And ultimately, those
7  exhibits would not affect the outcome of either party's motion for summary judgment.
8  *Flowers-Carter v. Braun Corp.*, 530 F. Supp. 3d 818, 853 (D. Ariz. Mar. 31, 2021).
9  Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (Doc. 85) is **GRANTED**, Plaintiffs' partial motion for summary judgment (Doc. 86) is **DENIED**, and Defendant's motion to strike (Doc. 96) is **GRANTED**. The Clerk of the Court is directed to enter judgment accordingly and terminate the case.

Dated this 11th day of December, 2025.

Douglas L. Rayes
Senior United States District Judge